Good morning. I'm going to reserve five minutes for rebuttal. Good luck. We'll try. I'll take what I can get. May it please the Court, Julia Strickland on behalf of Chase Bank. I thought I'd address this to begin with from a very practical level because there is a lot of briefing here with respect to all of the legal issues, which of course are myriad, and the parties have spent an enormous amount of time briefing, and there's a fair amount of case law on a variety of the permutations of the legal issues. Let me talk first about the sanctity of contract. This is really a very practical point, which is Chase enters into a credit card agreement with its cardholders. Chase and its cardholders need to know what the rules of the road are in terms of their ongoing relationship. This case, in the first instance, is about the sanctity of that contract and the predictability of contractual relations. The plaintiff here asked the Court and is asking this Court to rewrite the party's agreement based upon a lawsuit filed three years after the plaintiff obtained his credit card and used the card. It's not really us, right? It's the California courts which have said that class action waivers are not actually in your contract, under most circumstances. Actually, the California courts, as recognized in the concurrence in the Hoffman case, are all over the map on this exact issue. But weren't those two unpublished and one vacated opinions? There's one unpublished, two vacated, but the reason that they were vacated is because the Court took the Gentry case, and the Gentry case actually has nothing to do with any of this. There's also a myriad of other California cases and cases around the country that address this issue in different ways. For example, the Discover II case is a case in which a contractual choice of law provision and a class action waiver were upheld. Now, in the Discover II case, one of the key factors which distinguished it from Klessman and the others was that the Court held that the class action waiver was hidden, because rather than being expressly in that contract, if I'm remembering the right case, it was a reference to the rules of the arbitration which doesn't allow class action. Actually, with respect to Your Honor, and it may be that I misunderstood your question, it's actually the reverse. In the Discover II case, the provision was fully disclosed, and the Court found that it was fully disclosed. And what the Court did was honor the Delaware choice of law provision, which is what we believe should occur here. And in fact, here, Plaintiff and the Court below conceded that under Delaware law, the class action waiver would be fully enforceable. It was the Klessman case that had a situation which, frankly, is a great example of bad facts making bad law, and is highly distinguishable from the facts here, highly distinguishable from the Discover case, in which the class action waiver wasn't actually disclosed at all. And it was, and there's a lengthy opinion with a lot of phenomenal verbiage from the Court, that basically you had to wind your way through a website to figure out that there was an anti-joinder provision so you wouldn't even know that you were waiving your right to a class action. That is not the case before this Court. Now, here, Appelli says that the District Court made findings about this, that there was surprise, or that there was hiddenness. How do you distinguish that? I think the language they point to is that the Court disagrees with Chase's argument that Davis had a realistic opportunity to discover the class action waiver. Well, that's an absolutely critical point in connection with this appeal, because the Court did write a lengthy opinion and reached a lot of conclusions, but with respect to Judge Pregerson, those findings are not based on the record. The burden of proof here, and this is uncontroverted, is squarely on the plaintiff, on the person opposing the arbitration provision and the enforceability. There's absolutely no dispute about this. The burden was with Mr. Davis to come forward and demonstrate why the arbitration provision was unconscionable. The only evidence that Mr. Davis had in the record is a half-a-page declaration that doesn't address any of the things that the Court found. Just to clarify, that particular statement about the surprise or the opportunity to discover the class action waiver, first, is that a finding of fact, and second, are you saying it was clearly erroneous based on the record? The answer to the first question is I don't understand how it could possibly be a finding of fact, because there was no such evidence in the record. So it was not possible for such a finding to be made. Mr. Davis submitted no such evidence. His declaration, which is a grand total of, I believe, three paragraphs, half a page, and the first paragraph is I'm Gary Davis, just attaches a copy of his application. What does that application show? That application shows that he actually signed a one-page document right under a disclosure that says I know that I'm agreeing to arbitrate my disputes. And that is the only evidence that he presented. Judge Pragerson reached his own conclusions, not on any record evidence. And so the answer is no, there wasn't evidence, and thus any findings are clearly erroneous. Are you saying we don't ever have to get to the choice of law issue, and that we don't have to get to the analysis about what's the fundamental policy of California? I'm saying probably two things at the end of the day, and I'm happy to discuss all of those issues at length. Because obviously I think, you know, if Delaware law applies and there isn't a problem with fundamental California policy, then I think even they can see that they lose, right? I think that with respect, that mixes the issues a little bit. What I am saying first is that the court should reverse, because plaintiff did not meet the burden that he is required to sustain. The evidence simply was not there to demonstrate unconscionability, which is what is required in over to avoid application of an arbitration provision. When I look at the Discover Bank test, it seems like a pretty low bar. It says it's a contract of adhesion, there's a small amount of damages, and there's an allegation that the party with superior bargaining power has carried out a scheme. And so why is it that there's not enough evidence for those three prongs? That's actually not the entirety of the Discover Bank test. The Discover Bank test goes through the entire restatement test, and remanded on Nedloyd, and in fact, Discover 2, the court reached its conclusion based upon which state had the materially greater interest. And under the materially greater interest prong of the restatement analysis, you never even need to get to fundamental public policy. What Your Honor has just referred to is actually the fundamental public policy piece of the test. It's sort of the substantive unconscionability, but once they find that it's unconscionable, then they say, well, there's a fundamental policy in California not to allow such unconscionable waivers. Well, that's not exactly how the test works. The test actually has three pieces to it, and in terms of unconscionability, you look at procedural and substantive. In California, you need to demonstrate both in order to have an unconscionable contract. So which part of the test are you saying is not supported? I mean, there's several different tests. Schroyer sort of combines them all, and then Hoffman as well. So what part of the test are you saying is not supported by evidence? Just very clearly, which element? The element here in particular that we're focused on is procedural unconscionability because of the existence of the opt-out. And going back to what I said previously, and I believe Judge Callahan asked me what we're looking for, we think that the decision should be reversed because of the absence of evidence, the failure of the plaintiff to meet his burden, but alternatively the case should be remanded based on the decision in Hoffman where the court remanded in order for evidence to be taken and a balance to be stricken with respect to the procedural unconscionability aspect. This is not the Discover case. Discover did not have an opt-out. So the court in Discover never had to address procedural unconscionability. The court said we can move past that, it's procedurally unconscionable. Here, as in Hoffman, there's an opt-out. You did not have to accept the provision of arbitration, and so that actually distinguishes this case. There was also another procedural unconscionability point here which is key. Unlike Hoffman, unlike Discover, Mr. Davis signed by hand a one-page document that said, I know I am bound to arbitrate my disputes, which makes this case different, and at a minimum, we think this court should remand for a determination as to whether there was a meaningful choice as contemplated in the Hoffman case. Just one last question, which wasn't raised in your briefs. The district court struck down the entire arbitration provision, although it was only the class action waiver that it found to be unconscionable or against California fundamental policy. Is that correct? Do you agree with that? We do have a severability clause, and, Your Honor, we don't think you even have to get to that point, but the court could strike down the class action waiver portion of the agreement, at which point it would be the election of Chase as to whether to arbitrate or not. Do you want to reserve the four minutes? I will reserve my four minutes. Thank you. Good morning. My name is Drew Pomerantz. May it please the Court, my co-counsel Andrew Sokolowski is with me. I want to address Ms. Strickland's points and go right to the key issue, because I think there was a lot of confusion up here in terms of unconscionability. This is settled ground in California and in the recent Ninth Circuit cases in Shroyer and Hoffman. The unconscionability analysis, which shows that California's fundamental public policy is not to enforce unconscionable class action waivers. So to call it unconscionable in a way begs the question, what shows unconscionability? When you say fundamental public policy, is it even though when you say it's just settled, is it settled that case law tells us what our fundamental public policy is? Well, the cases have gone and looked at what the statutes are, and California has several statutes that say we will not enforce unconscionable agreements. The Civil Code statute, the California Legal Remedies Act says any waiver of class action is unconscionable and is against public policy. 17200, which we've pled, and California Post Prop 64 can only be brought in a representative manner as a class action. There's a fundamental policy to protect the public by virtue of class actions. So the courts have said and declared the fundamental policy, but they've tethered it. Is there a difference between public policy and fundamental public policy? Well, the words have gone back and forth, but the cases Discover and Schroer and Hoffman recognize that the fundamental public policy of California is not to enforce unconscionable class action waivers because it violates Civil Code 1668, and that is a statute that says California will not enforce unconscionable agreements. So the fundamental public policy is tethered to statutory law, and the cases have been clear in recognizing that. So what makes a contract then unconscionable? Two elements, procedural unconscionability, substantive unconscionability. And it's well settled that if we look at a sliding scale, you can have a lot of one and a little of another. Can you address the opt-out provision? Yes. There is no opt-out provision in this case of any meaningful kind. The opt-out that Ms. Strickland keeps referring to is if you don't like it, you can close your account. Meaning, well, anybody can close their account. You can't argue with Chase, you can't negotiate with Chase. You either close your account or you accept their terms. It's a take it or leave it, and the cases have recognized that that is procedurally unconscionable. That's not a meaningful choice. Where Hoffman differs is Hoffman said if you don't like it, then fine. You can continue to use your card on the same terms as you used it before until the expiration date on the card. And at that point, then our contractual relationship is over, and you can pay off your bill according to the existing terms. That's extremely different from the situation that Mr. Davis had, which is if you don't like it, close your account. Take it or leave it. That's procedurally unconscionable. The issue of whether Mr. Davis was surprised is a red herring. Mr. Davis could have seen the arbitration clause and said, I see it, I understand that's what they're saying, and it's still procedurally unconscionable. It's a contract of adhesion presented to him on a take it or leave it basis with no opportunity to negotiate against a party of superior bargaining power. That's procedurally unconscionable. If you don't know about it, procedural unconscionability can be shown by a take it or leave it provision given to you by a party with superior bargaining power. So we have procedural unconscionability, and Judge Kragerson found that. Substantively unconscionable is the element of a class action waiver that exempts Chase from all liability. I mean, let's call it what it is. Chase is saying, Mr. Davis, there's a take it or leave it provision, and we're going to apply the law of the state having nothing to do with our transaction to exempt us from any liability for anything we do to the consumers of the state of California. That's substantially unconscionable. That is settled by the Discover Bank case and recognized by Schroer and recognized by Hoffman. Now, the one point I do want to make, because we talked a little bit about the Discover II case, where they did ultimately apply Delaware law. The reason that was the case is there were no California claims brought in the Discover II case. They brought their action under Delaware statutes seeking to certify a nationwide class action. Under those circumstances, Delaware did have a material interest in the case, and it's interested in the case. The interest outweighed that of California. Now, Chase makes the argument that even if the class action waiver fails and we apply California law, otherwise Delaware law controls the contract and the 17-200 claim, et cetera, can't be brought because those are California law claims.  Well, I don't really understand that argument, honestly, Your Honor. Whether Delaware law applies or whether California law applies, you have to address the causes of action that are pled in the complaint. It doesn't change our complaint. Now, I will recognize that if Delaware law does apply in this case, Delaware law would enforce a class action waiver, and that means that Gary Davis would have to bring an individual case and Chase would essentially escape liability for the wrongdoing. So the reason that California's choice of law analysis would have to apply is because California says we have a material interest in protecting our consumers from schemes that are designed to cheat large amounts of people out of small amounts of money carried out by corporations who come into the state and purposely avail themselves of the opportunity to do business with our consumers. So that's why the unconscionability analysis applies. As I said, I don't really understand Chase's argument that somehow my California claims would disappear if Delaware law were to apply. The one thing that Ms. Strickland started her argument with and I'd like to address is she says this case is about the sanctity of contract. We need to know the rules of the road. I would almost agree. Sanctity of contract includes a meeting of the minds. Was there a meeting of the minds? There might be a case if she said, well, let's stick to what Gary Davis... Correct. He signed it. He took out the credit card with First National American Bank and there was a provision that says Georgia law applies. If there was ever a meeting of the minds, and I contend there wasn't because I contend we're all engaging in one big fiction when we say a consumer and a credit card company entered into a meaningful contract. Because at no point did Mr. Davis sit down with the bank and say, well, now let's negotiate whose law should apply. I mean, we all know that's a big joke. It never happens. But even if we want to go that route of the fiction, then maybe Georgia law apply because that's who he took the contract out with. It was only after First National Bank was bought out by Bank One and then later bought out by Chase that they submitted the bill stuffers and shoved those bill stuffers into his bills, which had extremely fine print, as Judge Cragerson recognized, and then said, by the way, now, Delaware law applies. And it was buried in small print, in small font. So if we want to talk about the sanctity of contract, one of the rules is you don't get to unilaterally change terms by surprising the other party in the middle of the deal. So this case isn't about the sanctity of contract. It's about a company, a large company, who tried to exempt themselves from liability on a mass basis by forcing its people to essentially arbitrate small claims, which nobody will do, maybe a couple people will go to small claims court, but it's a classic scheme of a party designed to exempt themselves from liability for wrongdoing. And California has settled on this, that it's illegal, Discover says it, and all the appellate courts that follow it that say it. There's not a single published California appellate decision or a single published opinion out of the Ninth Circuit that agrees with Chase's position. The best they can do are cite some unpublished cases or a few isolated district court cases or out-of-state cases. Nothing in California or the Ninth Circuit. I see I'm just about out of time, so unless the panel has any further questions. You have five minutes, I think. You don't have to stop. We can see you have five minutes. No, I know. Sometimes brevity is better. There is one last point I want to make and then I will stop. They've made an issue out of the fact that the court cannot look to the Consumer Legal Remedies Act as a basis for the fundamental public policy against waiving class actions. There is a specific statute in the California CLRA which precludes waiver of class actions. We've pled the CLRA and they say, well, you can't use it in the court, you can't adjudicate that because of the Berry v. Berry case, or rather Berry v. American Express. A couple points and then I will sit down. Berry doesn't apply because that was a very unique case where the only claim made was a claim seeking the court to find a provision of the contract or the card member agreement unconscionable. There was admittedly no transaction, no sale, nothing involved in the sale of goods. The CLRA says that in certain transactions which result in the sale of goods and then they list a whole array of things that are illegal. This is exactly what we have here with Mr. Davis. Every single one of the abuses that Chase engaged in was tethered to a purchase that Mr. Davis made at Circuit City for which he then paid money. Nothing in Berry says that a credit card transaction isn't part of the CLRA. It says credit card transactions which are not based on any sale or lease of goods that stand alone as a credit card issue. That's what's not covered by the CLRA. In Hoffman, the court characterized Berry as holding that the CLRA does not apply to credit card transactions. I read that in a footnote, Your Honor, and that troubled me because I think that that is a mischaracterization or a shorthand characterization of the Berry case, which is just not correct. It doesn't apply to a credit card transaction separate and apart from the sale of goods. So we're supposed to accept your interpretation of the Hoffman court? No, of course not, Your Honor. What I'm saying is accept what Berry says. A reading of Berry will simply say that the CLRA does not apply to credit card transactions separate and apart from the sale or purchase of goods. There's language in there that they purposely say that and they go to great lengths to describe what is at stake in that case and what is being pled. And they clearly say there is no allegation here that tethers this complaint to any purchase or sale of goods. My second point is that we're not here to adjudicate whether I have a good CLRA claim. That issue was not before Judge Pragerson. It's not before the court. I have pled the elements of the CLRA claim and we can sit and argue whether Berry applies, but I've pled it. And my second point would be Berry does not apply and, of course, don't accept my representation of Hoffman's characterization. I think an accurate reading of Berry will make that very clear. Having addressed that, unless the Court has any further questions. Thank you, Your Honor. Thank you for your argument. Well, let me start where he ended, which is discussing the Berry case very, very briefly. The Ninth Circuit actually had it exactly right on the Berry case. The Berry case stands for the proposition that the CLRA does not extend to cases involving the extension of credit. That's exactly the case before this Court. The fact that a Berry claim has been pled and not yet demurred to or otherwise, you know, moved to a 12B6 motion or otherwise rejected is just a matter of timing. And, in fact, the Berry decision and a number of cases similar to that have been up to the California Supreme Court on petitions for review, and the California Supreme Court has not taken those cases. So Berry stands for exactly the proposition that the Ninth Circuit concluded it stands for and is exactly why one cannot conclude that the California courts have reached a decision on fundamental public policy. The various citations provided by Plaintiff's counsel or Appellee's counsel are not on point. Discover I expressly does not address fundamental public policy. I argued that case before the California Supreme Court. The issue was squarely presented to the California Supreme Court, and it didn't decide it. And, in fact, there were three conquering opinions in which the court said, Judge Baxter in particular, said we don't think there's a fundamental public policy here. So Discover I does not stand for that proposition. The CLRA does not apply and doesn't say that either. The UCL, the unfair competition law, doesn't say that. The Schroer case is not a choice of law case, which this case is. And the cases are well settled that fundamental public policy is derived from the Constitution or the legislature and not from the courts. And I would submit with respect to Klusman that Klusman is an outlier based on its unusual fact circumstances. But that all brings us back to Hoffman, which is the Ninth Circuit authority before this court as the Ninth Circuit recognized, that panel recognized, you know, weeks ago now and not much longer than that. The issue of an opt-out is a novel issue. And when presented with that novel issue, what did the panel in that case do? The panel remanded. And the panel remanded for decisions by the trial court based on evidence, which was not before this trial court, as to the practical impacts of Citibank's non-acceptance instructions and whether when placed on California's sliding scale, the non-acceptance provision renders the class action, I'm sorry, the class arbitration waiver conscionable when compared to the degree of substantive unconscionability. We have held that providing a meaningful opportunity to opt-out can preclude a finding of procedural unconscionability and render an arbitration provision enforceable. And as I indicated earlier, at a minimum, those findings of fact have not been made here based upon record evidence. Judge Kragerson expressed some opinions, but not based on anything that was in the record. Going to another points, a few points that were made by the appellees, under the argument, there can never ever be a binding contract between a credit card company and its cardholder. Essentially, you give the cardholder an option to take what the cardholder wants and leave what it doesn't, and the card company sits out there and waits to see what they decide to take or not. Here, taking the argument at its face, the very first document that is signed by hand, which is actually an unusual situation, hand signature, a one-page document, says, I agree that my claims will be arbitrated. And Georgia law, and we've briefed this, enforces class action waivers. So whether it's Georgia law or Delaware law for this purpose, actually does not matter. And with that, I see that my time is up.
judges: Callahan, Ikuta, Shubb